1  SEAN K. KENNEDY (No. 145632)
   Federal Public Defender
2  (E-mail:  Sean_Kennedy@fd.org)
   321 East 2nd Street
3  Los Angeles, California 90012-4202
   Telephone (213) 894-5063
4  Facsimile (213) 894-0081

5  *Attorney for Intervenor*
   SCOTT LYNN PINHOLSTER
6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11 MICHAEL ANGELO MORALES          )   CASE NO.  5-6-cv-219-RS
                                   )   CASE NO.  5-6-cv-926-RS
12          Plaintiff,             )
                                   )   DEATH PENALTY CASE
13       v.                        )
                                   )   **NOTICE OF MOTION AND
14 MATTHEW CATE, Secretary of the  )   MOTION TO INTERVENE BY
   California Department of Corrections )  SCOTT LYNN PINHOLSTER;
15 and Rehabilitation, et al.      )   NOTICE OF MOTION AND
                                   )   MOTION TO STAY
16          Defendants.            )   EXECUTION; MEMORANDUM
                                   )   OF POINTS AND
17                                 )   AUTHORITIES**
                                   )
18                                 )   DATE:  August 9, 2012
                                   )   TIME:   1:30 p.m.
19 _____  )   PLACE:  Courtroom 3

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**PAGE**

MEMORANDUM OF POINTS AND AUTHORITIES... . . . . . . . . . . . . . . . . . . . . . .  2

I.   Issues To Be Decided. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.  Summary of Relevant Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III. Pinholster's Motion to Intervene Should Be Granted. . . . . . . . . . . . . . .  9

    A.   Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

    B.   Pinholster's Motion to Intervene Is Timely. . . . . . . . . . . . . . . .  10

    C.   This Court Must Grant Intervention To Pinholster
        as of Right.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

        1.   Pinholster's Interests In This Matter Are Identical
            To Those of Morales, Brown, Sims and Fields . . . . . . . .  13

        2.   Without Intervention, Pinholster is Practically
            Impaired and Impeded From Protecting His Fifth,
            Eighth, And Fourteenth Amendment Interests in
            Avoiding Execution by an Unconstitutional and
            Arbitrary Procedure. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

    D.   The Standards for Permissive Intervention Are Met. . . . . . . . . .  14

        1.   This Court Has Independent Grounds for Jurisdiction. . .  14

        2.   The Claims of Pinholster Have Common Questions
            of Law or Fact with Those of the Main Action. . . . . . . .  14

IV.  Motion to Stay Execution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

    A.   Pinholster is Likely to Succeed on the Merits. . . . . . . . . . . . . .  19

    B.   Pinholster Will Suffer Irreparable Harm. . . . . . . . . . . . . . . . . .  20

    C.   The Equities are in Pinholster's Favor. . . . . . . . . . . . . . . . . . . .  20

    D.   The Public's Interest in Orderly Review and Litigation. . . . . . .  21

V.   Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

# TABLE OF AUTHORITIES

**FEDERAL CASES** PAGE(S)

*Associated General Contractors of Cal. v. Secretary of Commerce,*
459 F. Supp. 766 (C.D. Cal. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Barefoot v. Estelle,*
463 U.S. 880 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Beardslee v. Woodford,*
395 F.3d 1064 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Dickens v. Brewer,*
631 F.3d 1139 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Donnelly v. Glickman,*
159 F.3d 405 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Georgia v. Ashcroft,*
539 U.S. 461 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hill v. Western Electric Co.,*
672 F.2d 381 (4th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*League of United Latin America Citizens v. Wilson,*
131 F.3d 1297 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Martinez v. City of Oxnard,*
229 F.R.D. 159 (C.D. Cal. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Martinez-Villareal v. Stewart,*
118 F.3d 625 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*McDonald v. E.J. Lavino Co.,*
430 F.2d 1065 (5th Cir. 1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Morales v. Hickman,*
415 F. Supp. 2d 1037 (N.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Morales v. Tilton,*
465 F. Supp. 2d 972 (N.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 17

*Northwest Forest Resource Council v. Glickman,*
82 F.3d 825 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

*United States v. Oregon,*
745 F.2d 550 (9th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Oregon,*
839 F.2d 635 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Winbush v. Iowa by Glenwood State Hospital,*
66 F.3d 1471 (8th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                    **PAGE(S)**

*Winter v. Natural Resources Defense Council,*
    555 U.S. 7 (2008).  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

**STATE CASES**

*Morales v. Cal. Department of Correction & Rehabilitation,*
    85 Cal. Rptr. 3d 724 (Cal. Ct. App. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

**DOCKETED CASES**

*Cate v. United States District Court* (*Morales & Brown*),
    Case No. 10-72977. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*People v. Brown,*
    Case No. CR18104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

**FEDERAL STATUTES**

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 4, 14

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

28 U.S.C. § 1343. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Fed. R. Civ. P. 24.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**STATE STATUTES**

Cal. Code Regs. tit. 15, § 3349. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

1    PLEASE TAKE NOTICE that Scott Lynn Pinholster (Pinholster) hereby moves

2  the Court under Federal Rule of Civil Procedure 24, for an order granting him leave

3  to intervene in the present matter.  Pinholster's claims share with the main action

4  common questions of law or fact.

5    Pinholster does not have a stay of execution currently in any court.  Pinholster

6  further moves the Court for an order staying his execution and all preparations

7  relating thereto.  There is a strong likelihood the present matter will succeed on the

8  merits, the relative harm to the parties weighs in favor of Pinholster, and Pinholster

9  has not delayed unnecessarily in bringing this motion for a stay.

10    The motions are based on the Plaintiff Morales' Fourth Amended Complaint

11  for Equitable and Injunctive Relief Pursuant to 42 U.S.C. § 1983, this Notice, this

12  Memorandum of Points and Authorities, along with all exhibits and papers filed in

13  this action, and on any evidence received at the hearing.

14

15                                         Respectfully submitted,

16                                         SEAN K. KENNEDY
                                           Federal Public Defender
17

18  DATED: June 27, 2012                 By /S/  Sean K. Kennedy
19                                          SEAN K.KENNEDY
                                            Federal Public Defender
20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Scott Lynn Pinholster (Pinholster) seeks to intervene in the present action, pursuant to Rule 24(b) of the Federal Rules of Civil Procedure, because he "has a claim or defense that shares with the main action a common question of law or fact." *Id.* Alternatively and in light of the motion to intervene by the Los Angeles County District Attorney (Dkt. 543), Pinholster seeks to intervene under 24(a)(2) of the Federal Rules of Civil Procedure. Pinholster does not have a stay of execution currently in any court. Pinholster further seeks temporary, preliminary, and permanent injunctive relief to enjoin the Defendants, their officers, agents, servants, and employees, and all persons acting in concert with them from preparing to set or setting his execution date or executing him by lethal injection using the lethal injection regulations promulgated as California Code of Regulations, Title 15, § 3349 and following, or any similar practices or protocol.

## I.    Issues To Be Decided

1.    Whether Pinholster may intervene as a Plaintiff in this litigation pursuant to Rule 24 of the Federal Rules of Civil Procedure permissibly or as a matter of right.

2.    Whether Pinholster should be granted a stay of execution on the same basis and to the same extent as in the case of Plaintiffs Morales, Brown, Fields, and Sims, including but not limited to any preparations for the setting of an execution date for Pinholster.

## II.    Summary of Relevant Facts

Pinholster is a condemned inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR). He is held at San Quentin State Prison, San Quentin, California, 94974.

On December 15, 2006, this Court issued an order finding that the "implementation of California's lethal-injection protocol lacks both reliability and transparency." *Morales v. Tilton*, 465 F. Supp. 2d 972, 981 (N.D. Cal. 2006). The Court further determined that California's actions and failures to act with respect to

1  the implementation of its lethal-injection protocol have resulted in an intolerable risk

2  of a Constitutional violation. *Id.* To remedy this situation, California would have to

3  undergo a "meaningful" review of its processes, which "must be undertaken with an

4  openness to the idea of making significant improvements in the 'infrastructure' of

5  executions." *Id.* at 983.

6       Thereafter, Governor Arnold Schwarzenegger announced via a press release on

7  December 18, 2006, that he was "committed to doing whatever it takes . . . to ensure

8  that the lethal injection process is constitutional . . . ." (Dkt. 291)  The Governor

9  added that his "administration will take immediate action to resolve [the] court['s]

10  concerns . . . ." (*Id.*)

11       The Governor and CDCR issued a revised Operational Procedure 770 (2007

12  Lethal Injection Protocol) on May 15, 2007.  On November 29, 2007, the Marin

13  County Superior Court declared invalid and enjoined the enforcement of California's

14  2007 Lethal Injection Protocol. *Morales v. Cal. Dep't of Corr. & Rehab.*, No. CV

15  061436 (Super. Ct. Marin County, Cal. Nov. 29, 2007), *aff'd*, *Morales v. Cal. Dep't*

16  *of Corr. & Rehab.*, 85 Cal. Rptr. 3d 724, 733 (Cal. Ct. App. 2008).

17       On July 30, 2010, the California Office of Administrative Law (OAL)

18  promulgated regulations of the Lethal Injection Protocol (2010 Lethal Injection

19  Protocol), effective August 29, 2010.  Cal. Code Regs. tit. 15, § 3349.  With the

20  exception of a few additional deficiencies, the 2010 Lethal Injection Protocol is

21  substantially identical to the 2007 Lethal Injection Protocol, the version that was

22  published by the Governor and CDCR on May 15, 2007.

23       On August 30, 2010, the day after the 2010 Lethal Injection Protocol took

24  effect, the Riverside County Superior Court issued an execution warrant for Albert

25  Brown. *People v. Brown*, No. CR18104 (Super. Ct. Riverside County, Cal. Aug. 30,

26  2010).

27       After litigation involving five different courts over a six-week period, the

28  Court of Appeals for the Ninth Circuit directed this Court to reconsider its previous

3

denial of Brown's motion to stay his execution (Dkt. 420), and this Court then issued a stay.  (Dkt. 424.)  "[O]f particular importance" to the Ninth Circuit was the fact that Brown's claims were "identical" to those then before this Court by Morales.  (Dkt. 420, at 7-8.)

On September 28, 2010, this Court found that the Lethal Injection Protocol  "as implemented in practice through and including the date of the evidentiary hearing in the 2006 Morales litigation created a 'demonstrated risk of severe pain.'"  (Dkt. 424, at 4.)  This Court also found, based on its limited opportunity to compare the 2007 Lethal Injection Protocol and the 2010 Lethal Injection Protocol approved by the California OAL on July 30, 2010, that "there is significant dispute" that there is a meaningful difference between the two protocols other than the physical facility in which executions are to take place.  (*Id.* at 5.)  This Court further indicated that it "intends to undertake . . . review . . . as quickly as is reasonably possible" of the examination of the claims raised by Morales and Brown.  (*Id.* at 8.)

On October 8, 2010, Morales and Brown filed a Fourth Amended Complaint for Equitable and Injunctive Relief (Fourth Amended Complaint) pursuant to 42 U.S.C. § 1983 in this matter.  (Dkt. 428; Ex. A, Morales' Fourth Amended Complaint.)  On October 25, 2010, Defendants chose to move to dismiss the Fourth Amended Complaint rather than respond to discovery requests.  The motion to dismiss was heard on December 2, 2010 and denied by this Court on December 10, 2010.  On November 4, 2010 Defendants filed a motion to stay discovery, and Plaintiffs filed their Fourth Motion to Compel Discovery on November 15, 2010.

On November 16, 2010, in response to an inquiry by the Court and expressed concerns that the setting of future executions across California would result in disorderly litigation such as occurred with Brown, Defendants' counsel, the chief law enforcement officer of the State of California, assured the Court that no execution dates would be set in California until the litigation of this matter was concluded.  (Ex. B, 11/16/2010 RT 3-9.)

The Court stayed discovery propounded by Plaintiffs pending resolution of Defendants' motion. (Dkt. 453.) Defendants' motion was denied on December 10, 2010. (Dkt. 461.) Shortly thereafter, on December 22, 2010, this Court lifted the stay of discovery and the parties were ordered to respond to each other's discovery requests. (Dkt. 465.)

On November 22, 2010, Defendants filed a notice informing the Court and the parties, pursuant to this Court's order of October 5, 2010, that the CDCR ordered 521 grams of sodium thiopental that expires in 2014. (Dkt. 455.)

On December 29, 2011, Plaintiffs Fields and Sims moved to intervene and for stays of executions. (Dkt. 467.) Their motions were granted. (Dkt. 473.)

Defendants did not respond to Plaintiffs' discovery requests, but rather moved for a protective order (Dkt. 478) and to strike portions of the Fourth Amended Complaint. (Dkt. 484.)

On March 4, 2011 and in response to a stipulated intervention sought by inmate David Raley (Dkt. 511), the Court expressed its concern that issuing stays for all condemned inmates in California who were otherwise eligible for execution was unnecessary, given the assurances by the Attorney General of the State of California (counsel for Defendants) that no further execution dates would be set while the Court's review was pending. (Ex. C, 3/4/2011 RT 60-62.) Raley's stipulated intervention remains before the Court.

Defendants were ordered to respond to Plaintiffs' discovery requests forthwith. (Dkt. 513.) By stipulation and order, that deadline was extended to June 14, 2011 with further disclosures to occur fourteen days after selection of a lethal injection team, which was expected to occur by August 2011. (Dkt. 524.) The discovery completion date was set for January 15, 2012 with briefing submitted a month later. (*Id.* at 5.)

Defendants secured an execution team on or about October 17, 2011. (Dkt. 531.) On November 2, 2011, the dates for discovery cut-off and for the parties to

1   identify issues in dispute were extended to August 15, 2012 and September 15, 2012.

2   (Dkt. 531.)

3        On December 19, 2011, the Marin County Superior Court ordered that the

4   execution protocol, Cal. Code Regs. tit. 15, §§ 3349 et seq., was improperly enacted

5   under California's Administrative Procedures Act (APA) in response to plaintiff's

6   motion for summary judgment.  A judgment with an injunction was entered on

7   February 21, 2012.  (Ex. D, Marin County Super. Ct. Order.)  Defendant CDCR filed

8   a Notice of Appeal on April 26, 2012.  (Ex. E, Notice of Appeal.)  In that Notice,

9   Defendant CDCR stated that they would be reviewing the possibility of a single-drug

10  execution protocol during the appeal.

11       On March 27, 2012, the United States District Court for the District of

12  Columbia declared that the Food and Drug Administration (FDA) had acted

13  improperly in permitting the importation of thiopental for the purposes of executions,

14  and ordered the FDA to retrieve all imported thiopental.  Pursuant to the district

15  court's order, the FDA asked the CDCR in a letter dated April 6, 2012 to send any

16  foreign-manufactured thiopental in its possession to the FDA.  (Exs. E - G,

17  Correspondence between the FDA and the CDCR regarding California's supply of

18  foreign-manufactured thiopental.)  The CDCR has not returned the thiopental to the

19  FDA, and the FDA and Department of Health and Human Services are appealing the

20  decision in the U.S. Court of Appeals for the District of Columbia Circuit.  (Ex. F,

21  Notice of Appeal filed 5/25/2012.)

22       On April 5, 2012, this Court ordered that due to uncertainties regarding how

23  the Marin County Superior Court litigation would impact the present action,

24  discovery is stayed to allow the parties to avoid engaging in discovery that may

25  become moot or wasteful.  This Court further ordered the parties to report the status

26  of the actions in the Marin County Superior Court and the District Court of the

27  District of Columbia on July 16, 2012.  (Dkt. 534.)

28

**MTN TO INTERVENE BY PINHOLSTER;**
**MTN TO STAY EXECUTION**

On May 1, 2012, the District Attorney for the County of Los Angeles (L. A. Dist. Atty) moved the Los Angeles County Superior Court for a hearing to order Defendant CDCR to develop a single-drug execution protocol without APA approval and to set executions dates for Sims and for Tiequon A. Cox under a one-drug method.  (Ex. G, L. A. Dist. Atty.'s Motion in L. A. Super. Ct.)

The L. A. Dist. Atty., who personally signed the motions, failed to inform the Los Angeles County Superior Court of this Court's stay of execution for Plaintiff Sims, the March 4, 2011 proceedings in this Court, the Marin County Superior Court's permanent injunction, or Defendant CDCR's appeal of that case.  (*Id.*)

On May 15, 2012, Cox moved to intervene and for a stay of executions.  (Dkt. 467.)  His motion is pending.

On May 24, 2012, the L. A.  Dist. Atty. moved to intervene in order to oppose intervention by Cox and to clarify this Court's stay order as it applies to Sims.

At a hearing on May 25, 2012, the Los Angeles Superior Court questioned whether it had jurisdiction to issue an execution order.  Sims questioned whether the L. A. Superior Court had authority post-conviction to conduct discovery or an evidentiary hearing on lethal injection protocols.  Sims argued that no court, civil or criminal, has the jurisdiction to require the CDCR to produce a one-drug protocol when that decision is in the discretion of the CDCR.  Without deciding the jurisdictional issues, the Court agreed to sign an order to show cause to the CDCR to appear and make representations about its ability to perform a one-drug execution. The Court set a hearing for July 13.  Consequently, it is possible that an execution date for Pinholster could be set shortly after July 13, 2012, setting off a chain of events similar to what occurred with Brown in September of 2010.

Like Cox and Sims, Pinholster was convicted and sentenced in Los Angeles County.  He does not have a stay of execution.  Because the L. A. Dist. Atty. is threatening to set execution dates for prisoners sentenced to death in Los Angeles County, Pinholster is in a more precarious position than the position that Sims and

1   Fields described in their motion to intervene and for a stay of execution which this

2   Court granted.  (Dkt. 467, at 4.)

3          The L. A. Dist. Atty. claims that "Office" has a "significantly protectable,"

4   "'direct'" and not "contingent or remote," "extreme" interest in seeking an execution

5   date using a single-drug method of execution.  (Dkt. 542, at 4.)  If the L. A. Dist.

6   Atty.'s assessment of its interest is accurate, then Pinholster's interest is similarly

7   direct, non-contingent, not remote, and extreme.  Pinholster has a liberty  interest

8   protected by the Fourteenth Amendment of the Constitution in utilizing State

9   procedures to prevent his execution in a manner that would be deemed cruel and

10  unusual under the Eighth Amendment.  The L. A. Dist. Atty. claims to have an

11  interest in obtaining clarification of this Court's stay order as it relates to Sims.  How

12  the stay relates to Sims is presumably how it relates to Pinholster as this Court has

13  expressed that a stay for these Plaintiffs and the State's assurances to the Court in this

14  case regarding the setting of execution dates affect all other similarly situated

15  prisoners on death row in California.  Pinholster's situation is particularly aligned

16  with Sims as both men were sentenced to death in Los Angeles County.  Unlike Sims,

17  Pinholster does not have a stay although presently he is exhausting his post-

18  conviction claims in state court.

19         Pinholster's counsel sought a stipulation to intervene and for a stay for

20  Pinholster that was identical to that which Defendants stipulated to and submitted to

21  this Court for Raley.  (Dkt. 511.)  Without explanation, Defendants' counsel now will

22  not agree to the same terms for Pinholster.  Pinholster's counsel requested

23  Defendants' position on this Motion and have been advised only that Defendants are

24  continuing to review their options.

25         Pinholster is not required to exhaust administrative remedies before bringing

26  this claim because resolution of the grievance seeking modification of the regulations

27  is not possible through the CDCR administrative process and exhaustion is futile.

28  *See Beardslee v. Woodford*, 395 F.3d 1064, 1069 n.5 (9th Cir. 2005)  Nevertheless,

8

1  once Pinholster became aware of the L. A. Dist. Atty.'s motion in Los Angeles

2  Superior Court, Pinholster submitted his inmate appeal for administrative remedy on

3  June 13, 2012.  Pinholster has received no response from Defendant CDCR to date.

4      By this motion to intervene, Pinholster also seeks to avoid any potential

5  objection to be raised in the future by Defendants that Pinholster is not entitled to

6  intervene or to a stay of execution due to "inexcusable delay."  Although Defendants

7  did not raise this objection to Brown's motion for intervention and for a stay of

8  execution in this Court, Defendants did untimely raise it in their later-withdrawn

9  Petition for Writ of Mandamus to the Ninth Circuit Court of Appeal in *Cate v. United*

10 *States District Court* (*Morales & Brown*), Case No. 10-72977.

11 **III.   Pinholster's Motion to Intervene Should Be Granted**

12         **A.   Introduction**

13     Morales' and Brown's Fourth Amended Complaint for Equitable and

14 Injunctive Relief is incorporated herein by reference.  (*See also* Dkt. 428; Ex. A,

15 Morales Fourth Amended Complaint.)  Pinholster joins in the Morales Complaint in

16 all its particulars as it currently is set forth.

17     A federal court must permit intervention as of right by anyone who files a

18 timely motion and who "claims an interest relating to the . . . transaction that is the

19 subject of the action, and is so situated that disposing of the action may as a practical

20 matter impair or impede the movant's ability to protect its interest, unless existing

21 parties adequately represent that interest."  Fed. R. Civ. P. 24(a).  Alternatively, "a

22 court may grant permissive intervention where the applicant for intervention shows

23 (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the

24 applicant's claim or defense, and the main action, have a question of law or a

25 question of fact in common."  *Northwest Forest Resource Council v. Glickman*, 82

26 F.3d 825, 839 (9th Cir. 1996); Fed. R. Civ. P. 24(b).

27     Pinholster satisfies the standards for intervention as of right as well as for

28 permissive intervention.

**MTN TO INTERVENE BY PINHOLSTER;
MTN TO STAY EXECUTION**

### B.    Pinholster's Motion to Intervene Is Timely

Pinholster's motion to intervene is timely under standards for intervention as of right and permissive intervention.  In determining whether a motion to intervene is timely, courts consider three factors:  "the stage of the proceedings, the prejudice to existing parties, and the length of and reason for the delay."  *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997); Fed. R. Civ. Proc. 24(b)(3).  All three factors weigh in favor of granting Pinholster's motion to intervene.

This matter is still in its initial stages of review, mandated by numerous court orders.  A status report on pending matters is due on July 16, 2012.  The litigation is not "beginning to wind itself down," such that any additional delay caused by Pinholster's intervention is "relevant to the timeliness calculus*." League of United Latin Am. Citizens*, 131 F.3d at 1304.  Regardless, there will be no delay to existing parties as a result of Pinholster's intervention.

Federal Rule of Civil Procedure 24(b)(3) sets forth the standard by which a court determines whether a motion for permissive intervention is timely:  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  "The most important consideration in determining timeliness is whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene.  In fact, this may well be the only significant consideration when the proposed intervenor seeks intervention of right."  *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970) (citations omitted).  Pinholster is not aware of any prejudice to existing parties, and counsel for Plaintiffs have no objection to the intervention.

Intervention by Pinholster will not prejudice the rights of existing parties.  Pinholster does not seek to "relitigate matters which have previously been litigated," raise any claims other than those raised by existing plaintiffs, or assert any claims

against them.  *United States v. Oregon*, 745 F.2d 550, 553 (9th Cir. 1984) (holding

that the state of Idaho could intervene in litigation concerning fishing on the

Columbia River when "Idaho has disclaimed any intent to relitigate matters which

have previously been litigated, to raise any claims unrelated to the Tribes' treaty

fishing rights, or to assert any claims against the other states").  *See*, *e.g.*, *Martinez v.*

*City of Oxnard*, 229 F.R.D. 159, 163 (C.D. Cal. 2005) (holding that while discovery

is still being conducted, Defendants would not be prejudiced by intervention).

Defendants are aware that Pinholster has a significant interest in the outcome of this

litigation.  *See*, *e.g.*, *Winbush v. Iowa by Glenwood State Hosp.*, 66 F.3d 1471 (8th

Cir. 1995) (intervention of twenty-one individuals in Title VII action was timely even

though it occurred 10 years after the filing of the complaint and following the bench

trial because Defendants were aware of the intervenors who were members of the

class action).

Pinholster has not delayed in bringing his claims.  California's execution

protocol went into effect on August 29, 2010 but was declared invalid on February

21, 2012.  During that time, Pinholster was exhausting his habeas claims.  As a result

of the State's assurances that execution dates would not be sought while this Court's

review of this case is pending, this Court questioned on March 4, 2011 whether stay

applications are necessary for prisoners facing an execution in California.  Pinholster

brings this motion to intervene promptly following the L. A. Dist. Atty.'s filing of a

motion to intervene in this Court and motion in the Los Angeles County Superior

Court for an order setting execution dates and an order for the CDCR to develop a

single-drug execution protocol for use in those future executions.  Pinholster seeks

intervention prior to the setting of any execution date in order to avoid putting this

Court in the position in which it was placed in September 2010.  (*See* Dkt. 424, at 7

("it is clear that the urgency of the present situation was created not by Brown but by

Defendants' decision to seek an execution date only thirty days after the new

regulations became final").

**MTN TO INTERVENE BY PINHOLSTER;**
**MTN TO STAY EXECUTION**

As explained further in detail below, the interests of Pinholster are identical to those of Morales, Brown, Sims, and Fields in this action.  *Cf. Donnelly v. Glickman*, 159 F.3d 405, 413 (9th Cir. 1998) (upholding the denial of a motion to intervene because the "interests of plaintiffs and the proposed intervenors 'are in direct opposition,' resulting in prejudice to existing parties").  Pinholster joins the Fourth Amended Complaint in all its particulars and counsel intends to work cooperatively with counsel for Morales, Brown, Sims, and Fields and to assist in developing any further briefing rather than filing separate briefing before this Court.

Intervention is critical to protect Pinholster from being subjected to an execution pursuant to a protocol that carries a demonstrated risk of severe pain.  If Pinholster is not permitted to intervene in this action, an execution date will be set for him, and it will be carried out pursuant to the current, flawed lethal injection protocol, using the sodium thiopental that the CDCR has obtained from a foreign source that was improperly imported and must be returned.  Worse, it will be carried out by some unknown procedure cobbled together at the last minute by the Los Angeles County Superior Court.  Federal Rule of Civil Procedure 24(b) permits this Court to grant a motion for intervention to avoid such an unconstitutional state action.  *Hill v. Western Elec. Co.*, 672 F.2d 381 (4th Cir. 1982) (holding that the critical issue with respect to the timeliness of intervention is whether the proposed intervenor moved to intervene as soon as it became clear that the interests of the unnamed class members would no longer be protected by the named class representatives).

### C.    This Court Must Grant Intervention To Pinholster as of Right

As set forth above, a federal court must permit intervention as of right by anyone who files a timely motion and "claims an interest relating to the . . . transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a).

**MTN TO INTERVENE BY PINHOLSTER;**
**MTN TO STAY EXECUTION**

1          **1.**      **Pinholster's Interests In This Matter Are Identical To Those**

2                       **of Morales, Brown, Sims and Fields**

3      Pinholster joins in the Fourth Amended Complaint filed on behalf of Morales

4  and Brown on October 8, 2010.  All questions of law and fact related to Pinholster's

5  claims are identical to those in the Fourth Amended Complaint.

6          **2.**      **Without Intervention, Pinholster is Practically Impaired and**

7                       **Impeded From Protecting His Fifth, Eighth, And Fourteenth**

8                       **Amendment Interests in Avoiding Execution by an**

9                       **Unconstitutional and Arbitrary Procedure**

10      Intervention as of right must be granted when the disposition of the action

11  would put the movant at a practical disadvantage in protecting its interest.  *United*

12  *States v. Oregon*, 839 F.2d 631, 635 (9th Cir. 1988) (intervention as of right is proper

13  when factual determinations in lawsuit challenging conditions of state mental health

14  facility would have persuasive stare decisis effect in subsequent litigation by

15  residents of facility).

16      Intervention must also be granted when the existing parties do not adequately

17  represent the movant's interests.  *Associated Gen. Contractors of Cal. v. Secretary of*

18  *Commerce*, 459 F. Supp. 766, 771 (C.D. Cal. 1978), *vacated on other grounds*, 448

19  U.S. 908 (1980); Fed. R. Civ. P. 24(a)(2).  Though Pinholster shares identical

20  interests in the legal claims propounded by Morales, Brown, Fields and Sims, his

21  specific interest in avoiding execution by an unconstitutional protocol is not

22  adequately represented by the existing plaintiffs because, without him being a party to

23  this lawsuit, the State of California likely will set an execution date for him and

24  conduct his execution while this lawsuit is pending.  The likelihood of such action by

25  the State of California is demonstrated by similar actions undertaken by the State in

26  the past.  Despite the fact that this lawsuit was pending in August and September

27  2010, the State of California sought to set an execution date for Fields, and did set an

28  execution date and nearly accomplished the execution of Brown, condemned

                                                **MTN TO INTERVENE BY PINHOLSTER;**
                                                    **MTN TO STAY EXECUTION**

1   prisoners who at the time were not parties to this lawsuit.  The L. A. Dist. attorney

2   now seeks execution dates for Sims and Cox.  Only by intervening in this lawsuit

3   does Pinholster obtain some measure of security against execution by an

4   unconstitutional protocol pending the resolution of this matter.  *See Georgia v.*

5   *Ashcroft*, 539 U.S. 461, 477 (2003) (intervention properly granted to private parties in

6   state's action seeking judicial clearance of a legislative redistricting plan under the

7   Voting Rights Act when private parties identified interests not adequately represented

8   by existing parties).

9         **D.      The Standards for Permissive Intervention Are Met**

10        "[A] court may grant permissive intervention where the applicant for

11   intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely;

12   and (3) the applicant's claim or defense, and the main action, have a question of law

13   or a question of fact in common."  *Northwest Forest Resource Council v. Glickman*,

14   82 F.3d at 839; *see also* Fed. R. Civ. P. 24(b).

15              **1.      This Court Has Independent Grounds for Jurisdiction**

16        Pinholster's claims arise under the Eighth and Fourteenth Amendments to the

17   United States Constitution and 42 U.S.C. § 1983.  This Court has independent

18   grounds for jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28

19   U.S.C. § 1343 (civil rights).

20              **2.      The Claims of Pinholster Have Common Questions of Law or**

21                    **Fact with Those of the Main Action**

22        Pinholster joins the plaintiffs in the Morales Complaint. The claims of

23   plaintiffs and Pinholster share the following common questions of law and fact:

24        •      Whether the lethal injection regulations violate the Eighth and

25               Fourteenth Amendments to the United States Constitution by creating a

26               substantial risk that condemned inmates will experience severe pain and

27               suffering during executions.  (Fourth Amended Complaint, ¶¶ 22-23.)

28        •      Whether the procedure for the remote administration of chemical

substances, the absence of standardized procedures for administration of the chemicals, the lack of adequate training, screening and qualifications of the personnel on the execution team, and the combination and amounts of the chemicals used in executions create a grave, substantial and demonstrated risk that condemned prisoners will be conscious during the execution process and, as a result, experience an excruciatingly painful and protracted death. (*Id.* at ¶¶ 24-25, 27-31, 33-40.)

- Whether the lethal injection regulations fail to require the minimum expertise of the execution team personnel necessary to ensure their proper performance. (*Id.* at ¶¶ 26, 32.)

- Whether Defendants have deliberately chosen to conduct executions in a manner that is not constitutionally compliant by selecting chemicals that cause excruciating pain and therefore carry a substantial risk of serious harm to a condemned inmate and by failing to take precautions to ensure that the personnel involved in the execution process possess the training, experience, and expertise necessary to administer the chemicals properly. (*Id.* at ¶ 120.)

- Whether Defendants have deliberately chosen to conduct executions by a combination of chemicals and a procedure that carries a substantial risk of serious harm when a feasible, readily implemented alternative method of execution is available. (*Id.* at ¶¶ 5, 105(f), 106-109.)

- Whether the Lethal Injection Protocol provides "specific guidelines for the administration of the three separate chemicals." (*Id.* at ¶ 113.)

- Whether the Protocol contains adequate guidelines to assure that the inmate is "deeply anesthetized prior to injecting the second two drugs, or establish procedures for determining when an additional dose of sodium pentothal should be administered." (*Id.* at ¶ 116.)

1        •       Whether Pinholster, like Morales, Brown, Fields and Sims, is entitled to

2                injunctive relief.

3    **IV.    Motion to Stay Execution**

4        This Court should stay Pinholster's execution and all preparations relating

5    thereto by extending to him the exact stay already in place for Morales, Brown, Sims,

6    and Fields, which secures the orderly review in this Court that was ordered by the

7    Ninth Circuit Court of Appeals.  The Court has not ruled on Raley's stipulated

8    request to intervene and for a stay after it received assurances from Defendants'

9    counsel that executions would not resume until this litigation is completed.  Those

10   assurances now appear to be insufficient as to Pinholster to bind other state actors

11   who refuse to respect the agreements made by, and representations made to this Court

12   by, the California Attorney General's Office.

13       A plaintiff seeking a preliminary injunction must establish:  (1) that he is likely

14   to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence

15   of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an

16   injunction is in the public interest.  *Winter v. Natural Resources Defense Council,*

17   555 U.S. 7 (2008).  Under *Barefoot v. Estelle,* 463 U.S. 880, 885 (1983), Pinholster is

18   entitled to a stay of execution if he demonstrates "substantial grounds upon which

19   relief might be granted."  This standard is satisfied when the movant demonstrates

20   that his "argument warrants further review," which cannot be fully and fairly

21   accomplished in the time remaining before the execution.  *See Martinez-Villareal v.*

22   *Stewart,* 118 F.3d 625, 626 (9th Cir. 1997).  Pinholster meets these standards no less

23   than Brown did.

24       The course of the litigation here demonstrates that review has been delayed by

25   Defendants' difficulties in securing an execution team, litigation brought by

26   Defendants to prohibit discovery, state court actions and two state court injunctions.

27   Without valid lethal injection regulations in place, and in the absence of the

28   completion of discovery, the substantive review mandated by the Ninth Circuit

**MTN TO INTERVENE BY PINHOLSTER;**
**MTN TO STAY EXECUTION**

1    remand and this Court's order in response cannot yet take place.  (Dkt. 534.)

2         On February 22, 2006, a stay of execution in favor of Morales went into effect

3    to allow the Court to "hold an evidentiary hearing on the merits of Plaintiff's claims

4    . . ."  *Morales v. Hickman*, 415 F. Supp. 2d 1037, 1048 (N.D. Cal. 2006); *see also*

5    *Morales v. Tilton*, 465 F. Supp. 2d 972, 977 (N.D. Cal. 2006).  After the Court issued

6    its Memorandum of Intended Decision on December 15, 2006, further hearings were

7    stayed in November 2007 pending the outcome of the state regulatory litigation by

8    agreement of the parties.  (Dkt. 370.)  That state administrative regulatory litigation

9    was completed in August of 2010, and, pursuant to the remand order of the Ninth

10   Circuit issued on September 28, 2010, this Court ordered its review shortly thereafter.

11        The administrative review was delayed, however, by litigation instituted by

12   Defendants to dismiss the complaint and for a protective order, and a year-long wait

13   for the appointment of an execution team.  On October 15, 2010, Plaintiffs served on

14   Defendants interrogatories and requests for documents relating to Defendants' efforts

15   to adopt and implement the new lethal injection regulations which became effective

16   on August 28, 2010.  Defendants supposedly employed the new regulations even

17   earlier than the published effective date and were employing them through September

18   29, 2010 during Defendants' unsuccessful attempt to execute plaintiff Albert Brown

19   on September 30, 2010.  Defendants responded to the discovery requests with a

20   motion for a protective order (Dkt. 436), which induced Plaintiffs to file a motion to

21   compel answers, documents, and information.  (Dkt. 452.)  On March 4, 2011, the

22   Court held a hearing on these motions, as well as on subsequent letter-briefing (Docs.

23   497, 498, 500) requested by the Court regarding the impact of the then-recent

24   decision of the Court of Appeals for the Ninth Circuit in *Dickens v. Brewer*, 631 F.3d

25   1139 (9th Cir. 2011).

26        On March 11, 2011, the Court ordered "Defendants to produce the requested

27   documents and information and to answer the interrogatories."  (Dkt. 513.)  The

28   Court added that it "expects the parties to comply with their discovery obligations as

17

set forth herein forthwith . . ." (*Id.* at 6.)  Defendants have yet to comply with this order.  While Defendants have served supplemental responses to the interrogatories and document requests, two privilege logs with a supporting declaration, and certain documents, they have withheld hundreds of pages of responsive documents and they have improperly asserted objections with many of their responses.  Many of the documents that were produced were heavily redacted, and numerous emails were produced without the referenced attachments.  As to the objections asserted – e.g., deliberative process privilege and "Dickens" – the Court already specifically has ruled that these objections are without merit, evidenced by its March 11 directive to answer the interrogatories and produce the requested documents.  Defendants' subsequent document productions on July 22, 2011 and August 5, 2011 suffered from the same deficiencies.  In those submissions, Defendants also withheld in their entirety numerous documents that this Court ordered to be produced.  Defendants' position was that the Court did not order compliance on March 11, 2011, only that they respond and that their response could contain further objections and privilege assertions.

On September 13, 2011, Plaintiffs requested that Defendants "comply with [their] discovery obligations as set forth [in the Court's March 11, 2011 Order] forthwith" (Dkt. 513, at 6) by withdrawing their objections, providing complete answers to interrogatories, and producing the requested documents and information, including all documents identified in Defendants' privilege logs served on July 15 and August 5, 2011.  In the parties' November 2, 2011 Joint Proposed Schedule and included in the Court's November 3, 2011 Order (Dkt. 531), Plaintiffs agreed to wait for Defendants' requested meeting in order to try to get an explanation of Defendants' position and/or resolve this matter.  Defendants thereafter asked to postpone the meeting to the week of November 7, and Plaintiffs again agreed to the request.

With this issue unresolved, the Marin County Superior Court granted Plaintiff's motion for summary judgment on December 19, 2011, declaring the lethal

**MTN TO INTERVENE BY PINHOLSTER;**
**MTN TO STAY EXECUTION**

1   injection regulations invalid.  Judgment became final, with an injunction, on February

2   21, 2012.  CDCR has now appealed from this judgment.  The Notice of Appeal notes

3   that CDCR will commence a review of the viability of changing its procedure to a

4   single drug protocol.  The prospect of a different procedure in response to the state

5   court's order may render some discovery litigation in this case moot.  (See Order,

6   April 5, 2012, at 2, Dkt. 534.)

7          **A.     Pinholster is Likely to Succeed on the Merits**

8          Pinholster's request for an injunction is likely to succeed on the merits.  In its

9   Memorandum of Intended Decision, this Court already has found that the

10  demonstrable unreliability of the State's execution protocol, and Defendants' failure

11  to correct it, violate the Eighth Amendment.  It made that order explicit in response to

12  the Brown execution effort after remand from the Ninth Circuit.  (Dkt. 424.)

13         Pinholster sits now in a similar position as Brown did upon remand from the

14  Ninth Circuit.  Brown was facing execution under a procedure that was out of

15  compliance with state law.  That procedure has now been declared invalid and

16  enjoined, and the CDCR has been ordered to issue one that does comply with the

17  Administrative Procedure Act.  Nonetheless, the L. A. Dist. Atty. has requested that a

18  criminal court order the CDCR to bypass this process and execute prisoners

19  sentenced to death in Los Angeles County.

20         There is proof that Defendant CDCR substantially deviated from their

21  procedure in order to accelerate execution of Brown.  (Dkt. 423.)[1]  If an execution

22  date is set for Pinholster in the near future, it is likely that Defendants will deviate

23

24

25

26         [1]  As noted during the Brown litigation, the few documents produced indicated

27  numerous deficiencies, including the complete lack of training in the mixing of the
    chemicals.  Defendants have never produced numerous training documents required

28  to be maintained by the regulations such as chain of custody and sign in sheets, and
    have not produced any additional training materials since January of 2011.

MTN TO INTERVENE BY PINHOLSTER;
MTN TO STAY EXECUTION

1    from their ad hoc procedure again in order to execute Pinholster.[2]  The regulations

2    suffer the deficiencies noted above and within the Complaint.

3                    **B.    Pinholster Will Suffer Irreparable Harm**

4            Pinholster faces execution pursuant to the same – or worse – Lethal Injection

5    Protocol which already has required constitutional review by this Court sufficient to

6    grant stays of execution for Morales, Brown, Sims, and Fields.  Nothing has changed

7    in this regard, and without a stay, Pinholster faces the real possibility of cruel and

8    unusual capital punishment.  In fact, Pinholster faces a possibly more inhumane

9    execution as the L. A. Dist. Atty. has asked the state criminal court to cobble together

10   a procedure of unknown viability that will not have benefitted from the thorough and

11   necessary review this Court ordered in 2006, that the state courts have required be

12   undertaken in accordance with the state APA, and that the Governor has now

13   requested be done anew in the Notice of Appeal.

14                   **C.    The Equities are in Pinholster's Favor**

15           As discussed above, Pinholster brings this request for a stay promptly after the

16   L. A. Dist. Atty's motion to intervene and promptly after discovering efforts by the L.

17   A. Dist. Atty. to set execution dates for prisoners sentenced to death in Los Angeles

18   County and the instigation of that process.  There has been no delay.  The California

19   Attorney General has expressed twice in this Court that executions will not be set

20   until this Court's orderly review is completed.   Furthermore, state courts have ruled

21   twice that this review requires compliance with the state APA.  There is no equity that

22   favors the type of "fire drill" approach to litigation that we saw in February 2006 and

23   again in September 2010.

24

25

26   _____

27           [2]  Defendants possess thiopental which was illegally imported and must be
     returned to the Food and Drug Administration (FDA).  According to the L. A. Dist.
28   Atty.'s  motion, Defendants do not have any of the second lethal injection drug,
     pancuronium bromide.  (Ex. G, L. A. Dist. Atty.'s Motion in L. A. Super. Ct., at 20.)

MTN TO INTERVENE BY PINHOLSTER;
MTN TO STAY EXECUTION

1

### D.     The Public's Interest in Orderly Review and Litigation

2      In 2006, this Court stated that a thorough review of the process of executions

3 was necessary, and strongly suggested that the Governor take the lead in conducting

4 this review.  In 2010, the Ninth Circuit and this Court ruled that the review process

5 also requires independent and orderly judicial review.  Simply because a single

6 district attorney wishes to prevent that review does not make it in the public's interest

7 for this Court to permit him to circumvent the process that other state actors and two

8 courts have accepted as what must be conducted to comport with state law and the

9 Constitution.

10 ## V.     Conclusion

11      For the foregoing reasons, Pinholster respectfully requests that this Court grant

12 his motion to intervene and motion to stay his execution and all preparations relating

13 thereto.

14
15                                          Respectfully submitted,

16                                          SEAN K. KENNEDY
                                            Federal Public Defender

17 DATED: June 27, 2012              By */S/  Sean K. Kennedy*
18                                         SEAN K.KENNEDY
                                           Federal Public Defender
19
20
21
22
23
24
25
26
27
28